MATTER OF O'GORMAN

In Deportation Proceedings

A-12041024

*Decided by Board January 7, 1965*

A single scheme of criminal misconduct within the purview of section 241(a) (4), Immigration and Nationality Act, is not established by respondent's self-serving testimony where records of convictions show forgery of two checks on two different accounts one year apart, there was no connection between the accounts, and respondent did not have access to the second account when he started forging checks on the first.

CHARGE:

Order: Act of 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4)]—Convicted of two crimes after entry, petit larceny and attempted grand larceny, second degree.

This is an appeal from the order of the special inquiry officer requiring respondent's deportation upon the ground stated above. The appeal will be dismissed.

Respondent, a 37-year-old married male alien, a native of Scotland and citizen of the United Kingdom and Colonies, was admitted to the United States for permanent residence on April 3, 1960. His deportation is sought on the ground that he has been convicted of two crimes after entry; his defense is that the crimes arise out of a single scheme of criminal misconduct.

This is the respondent's testimony. Employed by an accounting firm, he visited various businesses to audit books; Mr. Donaughy was visited every Friday and Mr. Reidy every Tuesday. Respondent took some blank checks from Mr. Donaughy whose name he tried to forge but could not to his satisfaction. About a week later he took some blank checks from Mr. Reidy and tried to forge his signature; dissatisfied with the results, he kept trying to forge checks upon both accounts. Deciding he could satisfactorily forge the names of both Mr. Donaughy and Mr. Reidy, he made out a check in the sum of $200 on the Donaughy account and one for $400 on the Reidy

account; both checks were made out at respondent's home in the same evening, but were given different dates (p. 14). Respondent deposited the Donaughy check; finding it cleared, he deposited the Reidy check. There was an interval of about a month in making the deposits; it was brought about primarily by the need for determining if the first check would clear but was also to enable respondent to have sufficient time to juggle the books; to prevent suspicion which might be raised by the fact that too many deposits were made to respondent's account at one time, and because it was easier to conceal the taking of small amounts from two separate accounts than a large amount from one account. The forgeries apparently continued over a period of time.

The record does not support the respondent's version as to the manner and time the crimes were committed. The forgery of a check on the Donaughy account came to light. In an affidavit dated November 1, 1963 instituting criminal proceedings Mr. Donaughy charged the respondent with committing the crime of forgery of a check dated October 10, 1963 in the sum of $200; the affidavit stated that in the period from January 1963 to October 1963 when respondent had access to the affiant's books, he had taken eight blank checks. The affidavit states that respondent, when questioned by a detective, had said that he made out the check in Mr. Donaughy's office (Ex. 2). Respondent was permitted to enter a plea of guilty on November 12, 1963 to a charge of petty larceny. On December 20, 1963 he was given a suspended sentence and placed on probation.

When the Donaughy forgery came to light an audit of the accounts serviced by respondent revealed the Reidy forgeries. On December 3, 1963, Mr. Reidy filed an affidavit charging respondent with having committed forgery, grand larceny, and uttering 15 checks between October 1, 1961 and September 30, 1963 for a total of $5000. An indictment filed February 26, 1964 charged respondent with forging checks on Reidy's account from April 1962 to September 30, 1963. Three specific checks (November 6, 1962, June 4, 1963, September 30, 1963) formed the basis for nine counts. The respondent was charged with forgery of the three checks, with uttering each check and with committing grand larceny in the second by stealing the money he obtained by cashing each check. The fourth count of the indictment charged the respondent with committing grand larceny in the second degree by stealing $400 which he obtained by cashing the check forged on September 30, 1963. On this count, respondent entered a plea of guilty to attempted grand larceny, second degree; on March

7

17, 1964 he received a suspended sentence and was placed on probation. He is making restitution in connection with both convictions.

The respondent's claim that it was at his home and at the same time that he forged the two checks which were the bases for his convictions is contrary to his alleged admission to the detective that he forged one check at Donaughy's place of business. Moreover, even if it were true that both checks had been made out at the same time and place, a single scheme would not be established for the record reveals that the plot to steal from both Reidy and Donaughy could not have been formed at the same time: respondent who was uttering forged checks on Reidy in 1962 did not even have access to the Donaughy account until 1963. Furthermore, since there was no connection between Reidy and Donaughy, the stealing from one could not have been part of a conspiracy to steal from the other. Considering the self-interest of the respondent, the conflict in his testimony and statement reportedly made to the detective and considering the fact that respondent did not have access to the Donaughy account when he started forging checks on Reidy, we must conclude the Service has borne its burden of establishing that the two convictions did not arise out of a single scheme of criminal misconduct.

Respondent's statement that his deportation would result in separation from his two-year-old natural child and from her mother whom he intends to marry as soon as he receives a divorce from his wife in England is noted. Since the respondent is not eligible for discretionary relief, there is no administrative authority to grant him a legal status in the United States.

ORDER: It is ordered that the appeal be and the same is hereby dismissed.